# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIENVENIDO RODRIGUEZ, | )<br>) |
| Plaintiff, | ) Civil Action No. 16-1786<br>) |
| v. | ) Magistrate Judge Maureen P. Kelly<br>) |
| REV ULLIKLEMM, LIEUTENANT<br>BOONE, EDWARD NIEDERHAUSER, and<br>REV KIRT ANDERSON, | ) Re: ECF Nos. 73, 74 and 75<br>)<br>)<br>) |
| Defendants. | )<br>) |

## **MEMORANDUM ORDER**

Presently before the Court is Plaintiff's Motion for Relief from Judgment, Order or Proceeding ("Motion for Relief"), ECF No. 73; Plaintiff's Motion for Extension of Time to File Brief in Support of Motion for Relief from Judgment, Order or Proceeding ("Motion for Extension"), ECF No. 74; and Plaintiff's Motion to Stay to File Brief in Support of Motion for Relief from a Judgment, Order or Proceeding ("Motion to Stay"), ECF No. 75. For the reasons that follow, the motions are denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Bienvenido Rodriguez ("Plaintiff") is currently incarcerated at the State Correctional Institution at Forest ("SCI Forest"). This action arises from Plaintiff's incarceration at State Correctional Institution Pine Grove ("SCI Pine Grove"). Plaintiff's claims arise out of allegations that Defendants, employees of the Pennsylvania Department of Corrections ("DOC"), violated Plaintiff's First Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by failing to make religious accommodations for the practice of

Plaintiff's religion, Yoruba Santeria, and by improperly confiscating consecrated prayer beads that Plaintiff wore in connection with his faith.

Plaintiff, represented by Attorneys Christy Foreman and Alexandra Morgan-Kurtz, filed his Complaint in this action on November 28, 2016. ECF No. 1. The Court conducted an initial case management conference, ECF No. 15, and the case was referred to the alternative dispute resolution in the form of mediation, ECF No. 17. The Honorable Kenneth Benson (ret.) conducted the mediation on April 14, 2017, and Plaintiff attended in person. ECF Nos. 20 and 21. At the conclusion of the mediation, the case was resolved. ECF No. 21.

Although there was some initial dispute over the language of the settlement agreement and release, ECF Nos. 24, 25, 28 and 29, that required the assistance of this Court, ECF Nos. 30 and 32, the settlement agreement and release was executed by the parties in May 2018. ECF No. 33. The settlement agreement and release provided that a check in the amount of $6,500.00 was to be deposited in Plaintiff's inmate account. On July 26, 2018, this Court approved the Stipulation of Dismissal with prejudice and closed the case. ECF Nos. 34 and 35.

Over two years after the settlement was reached at the mediation, this case having been fully resolved and all claims released, Plaintiff, without his counsel of record,[1] filed a Motion to Re-Open Civil Action on July 5, 2019. ECF No. 44. Plaintiff sought leave to reopen the case for what he characterized as a breach of the settlement agreement and for ineffective assistance of counsel. Plaintiff also filed a Motion for Leave to File Amended Complaint. ECF No. 46. In these Motions, Plaintiff broadly alleged that Defendants violated his religious freedoms and the

---

[1] Following Plaintiff's *pro se* filing of various motions, on July 9, 2019, Plaintiff's counsel filed a motion to withdraw as counsel for Plaintiff. ECF No. 51. In support of their request, counsel explained that Plaintiff demanded they take actions with which counsel had a fundamental disagreement, and that Plaintiff appeared to have lost confidence in their representation, as he had filed multiple *pro se* motions with the Court, including twice seeking to have counsel removed. The Court granted Plaintiff's counsel's request to withdraw on July 9, 2019, and Plaintiff is now proceeding *pro se*. ECF No. 52.

2

terms of the parties' settlement agreement, but only specifically identified two instances of purported breach: (1) Defendants' placement of settlement funds into escrow; and (2) not permitting Plaintiff to purchase his Yoruba Santeria beaded necklaces. ECF No. 53 ¶¶ 10-11. Plaintiff further claimed that, following the execution of the settlement agreement, "more constitutional claims have arisen." Id. at ¶ 12. Defendants filed a Brief in Opposition. ECF No. 57.

Upon review, the Court found that a settlement of all claims was reached, the settlement agreement was fully executed by the parties and apparently complied with by the parties. ECF No. 61 at 3. With respect to Plaintiff's request for leave to amend his Complaint, the Court further found that Plaintiff had not established the requisite good cause for delay in moving to amend his Complaint. Id. The Court noted that, to the extent Plaintiff wished to bring a new lawsuit alleging new claims, he was free to do so. Id.

To the extent Plaintiff sought to have the Court address any issues relative to the handling of settlement funds, however, the Court granted Plaintiff permission to request that the Court schedule a conference with Plaintiff's former counsel and defense counsel, with Plaintiff participating by telephone. Id. at 4. Thereafter, Plaintiff requested, and the Court granted, the scheduling of a video status conference. ECF Nos. 63 and 64.

The Court held a status conference on November 12, 2019.[2] Plaintiff and Defendants' counsel participated in the conference, with Plaintiff participating remotely from SCI Forest. ECF No. 68. Plaintiff participated by audio conference as a result of technical issues with the video feed at SCI Forest. Id.

---

[2] The Court originally scheduled this status conference to take place on October 17, 2019. Because the DOC facility did not make Plaintiff available for this conference, the Court was required to reschedule this conference to November 12, 2019. ECF No. 65. At the Court's request, Plaintiff's former counsel appeared as a courtesy on October 17, 2019, but was unavailable attend on the rescheduled date.

3

During the conference, the Court addressed two issues that Plaintiff complained about in relation to the previous settlement: that he had not received a consecrated Santeria beaded necklace and his complaint relative to the payment of $6,500 in settlement proceeds.

First, as to the necklace, the settlement agreement expressly provided that Plaintiff was "permitted to purchase a consecrated black and red beaded necklace and consecrated yellow beaded necklace." ECF No. 77 at 11:7-9. Plaintiff stated:

> It's a little complicated because when you're initiated under the mysteries of Santeria Orisha, which is a saint, the person who initiated you has to reconsecrate the beads all over again, or a priest that is initiated under the same mysteries of the same Orisha saint that I was initiated under. That's probably where the problem comes in because they can't probably find a priest that—because those practices have to be strictly followed.

Id. at 7:4-11.

The Court asked Plaintiff to identify the name and address of the person who could consecrate the beads.

> PLAINTIFF: I can't do that, right, but the person who initiated me under those mysteries of Orisha Oshun said the beads were destroyed. They would have to get another chicken and they're not going to permit that on prison grounds. They're going to charge me another $2,500 just—the beads don't cost nothing, the beads only cost like maybe $5.00, depending what store you buy it from, but just the consecrated thing, they're going to charge me $2,500 all over again.
>
> THE COURT: Your issue is—the issue is not the cost of the beads themselves, the issue is having them consecrated.
>
> PLAINTIFF: Having to consecrate the beads, right.

Id. at 7:20-8:6.

Counsel for DOC reported that the chaplain had tried to assist Plaintiff by attempting to locate the Santeria beads, but he was told by a number of vendors that there had to be a particular type of Santeria and there were consecration issues. Id. at 10-11.

4

Following hearing from Plaintiff and counsel for the DOC, the Court again informed Plaintiff that the DOC had fully complied with the settlement agreement by permitting Plaintiff to purchase a Santeria consecrated black and red beaded necklace and consecrated yellow beaded necklace to be worn in his cell. Obviously, Plaintiff was free to contact vendors directly to purchase or consecrate the specific Santeria beaded necklace that Plaintiff wanted. Id. at 11-13. Thereafter, counsel for DOC offered assistance in facilitating the delivery of the consecrated beads to Plaintiff at SCI Forest. Id. at 13-14.

Second, in terms of the payment of the $6,500 issued to Plaintiff as part of the settlement, Plaintiff complained that the funds went into an escrow account and were not available in their entirety for his personal use.

Counsel for the DOC explained that DC ADM 005 expressly provides:

Yes. So, two matters. The first is Pennsylvania's Act 84, which authorized the Department of Corrections to issue a policy for the collection of court-ordered restitution and fines.

The department then duly did issue such a policy and the relevant section, this is DC ADM 005, Collection of Inmate Debts Procedures Manual, Page 3-9(e)(1). It says: When an inmate receives monetary damages or a settlement as a result of prison conditions litigation—which is what happened here—that are payable from funds appropriated by general assembly or insurance policy purchased by the Commonwealth—so here it was through funds appropriated by the general assembly—the proceeds shall first be used to satisfy fines, costs and restitution and any outstanding court ordered debt related to the criminal act. When an award or settlement occurs, the chief counsel's office will advise the Bureau of Administration, the Bureau of Administration will arrange to deduct the full amount owed from the proceeds.

And I have a case here Montanez [v.] the Secretary of Pennsylvania, Department of Corrections, 773 F.3d 472 at Page 477 ([3d Cir.] 2014) which confirms that the Department of Corrections is authorized to make policy about the disposition of these funds to pay the debts.

Now, I think where the second issue comes, there's another section of the policy that says that 20 percent of any money an inmate gets to his inmate accounts, goes

5

to pay down the debts. That is just money that he happens to get, maybe family gives it to him or he earns it in some way.

THE COURT: That is in his inmate account.

Id. at 16:19-17:22.

The Court explained to Plaintiff that in accordance with Act 84 and the DOC policy, DC ADM 005, regarding collection of inmate debt procedures, that if he receives any lump sum settlement being paid by state funds, those funds—in this case $6,500—must first go to court-ordered restitutions, fines and costs. Id. at 19.

Plaintiff indicated that he understood the applicable statute and policy, but he "would like" to pay only 50% towards restitution. Id.

At the conclusion of the conference, the Court clearly stated:

> So, I scheduled the video conference so that we could have you and Mr. Mazzocca in the Court's presence because I wanted to clarify to you to make sure it was clear with you in terms of the beads and what DOC was required to do.
>
> In terms of the beads, DOC stands ready to permit you to purchase the consecrated black and red beaded necklace, as well as the consecrated yellow beaded necklace. We've talked about a couple different ways you can get it. But it's your responsibility to get the beads, and if you can get them, if you can get them to Mr. Mazzocca, he has represented to the Court that he will make sure they get to you.
>
> Secondly, in terms of the 6,500, DOC, the defendants in this case, have paid the 6,500, and the issue is that you have substantial court-ordered restitutions, fines and costs that get paid first because that money is coming to you from the state.
> So, I wanted to get on the phone or on video with you and just be clear as to why that is. So, at this point, as I ruled, DOC has not violated the settlement agreement and release of all claims.

Id. at 20:14-21:8.

## II. LEGAL STANDARD

Plaintiff filed his Motion for Relief pursuant to Federal Rule of Civil Procedure 60(b). This Rule provides:

6

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

## III. DISCUSSION

### A. Motion for Relief (ECF No. 73)

On December 9, 2019, Plaintiff filed the instant Motion for Relief pursuant to Federal Rule of Civil Procedure 60(b). ECF No. 73. In his Motion, Plaintiff seeks relief from the November 12, 2019 status conference. Id. at 1. He argues that the conference was inappropriate because, due to technical issues with the video feed, the conference was conducted by audio. Id. He argues that he was prevented from providing his opposing argument as a result of audio deficiencies. Id.

Upon review, Plaintiff's Motion for Relief, ECF No. 73, is denied. As this Court previously held, and again explained to Plaintiff during the November 12, 2019 conference, this matter is settled and concluded. Defendants have complied with the terms of the settlement agreement. If Plaintiff seeks to assert new claims, he must file a new lawsuit. With respect to any technical difficulties that occurred at the conference on November 12, 2019, these did not result in Plaintiff's inability to participate by audio or affect the outcome. The transcript of the

conference reflects a thorough discussion with Plaintiff of the issues he raised relative to the settlement. ECF No. 77. To the extent Plaintiff sought to read a statement into the record at the conclusion of the conference, the Court permitted Plaintiff to submit this statement to the Court for consideration. Id. at 28:13-22.

### B. Motion for Extension and Motion to Stay (ECF Nos. 74 and 75)

In addition to his Motion for Relief, Plaintiff has filed a Motion for Extension, ECF No. 74, requesting an extension of time to file a brief in support of his Motion for Relief. On January 10, 2020, Plaintiff filed the requested brief in support of his Motion for Relief. ECF No. 79. Therefore, the Motion for Extension is denied as moot.

Plaintiff also filed a Motion to Stay, ECF No. 75, requesting the Court to "stay the briefing time" to reflect that his brief and exhibits will not be filed until February 2020. Because the brief has now been filed, the Motion to Stay is also denied as moot.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Relief, ECF No. 73, is denied as without merit because Defendants have complied with the terms of the settlement. Plaintiff's Motion for Extension and Motion to Stay, ECF Nos. 74 and 75, are denied as moot.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of this Order to file an appeal to the District Judge which includes the basis for objection to this Order. Any appeal is to be submitted to the Clerk of Court, United States District Court, 700 Grant Street,

Room 3110, Pittsburgh, PA 15219. Failure to file a timely appeal will constitute a waiver of any appellate rights.

Dated: January 16, 2020

SO ORDERED,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: Bienvenido Rodriguez
LQ7479
SCI FOREST
286 Woodland Drive
P.O. Box 307
Marienville, PA 16239

All counsel of record via CM/ECF