IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIENVENIDO RODRIGUEZ, | ) |
| Plaintiff, | ) Civil Action No. 16-1786 |
| v. | ) District Judge J. Nicholas Ranjan |
| | ) Magistrate Judge Maureen P. Kelly |
| REV ULLIKLEMM, LIEUTENANT BOONE, EDWARD NIEDERHAUSER, and REV KIRT ANDERSON, | ) Re: ECF No. 100 |
| Defendants. | ) |

## MEMORANDUM ORDER

Plaintiff Bienvenido Rodriguez is currently incarcerated at the State Correctional Institution at Dallas ("SCI-Dallas").[1] Plaintiff filed this action more than six years ago arising out of allegations that employees of the Pennsylvania Department of Corrections ("DOC"), violated Plaintiff's First Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by failing to make religious accommodations for the practice of Plaintiff's religion, Yoruba Santeria, and by improperly confiscating consecrated prayer beads that Plaintiff wore in connection with his faith. ECF No. 1.

While Plaintiff was represented by counsel, the parties executed a settlement agreement and release in May 2018. The settlement agreement and release provided that a check in the amount of $6,500.00 was to be deposited in Plaintiff's inmate account. On July 26, 2018, this Court approved the Stipulation of Dismissal with prejudice and closed the case. ECF Nos. 34 and 35.

---

[1] In correspondence dated April 13, 2023, he notes that he is now incarcerated at SCI-Dallas. ECF No. 100. The Court has updated his address of record.

Over two years after the settlement was reached at the mediation, this case having been fully resolved and all claims released, Plaintiff, without his counsel of record,[2] filed a Motion to Re-Open Civil Action on July 5, 2019. ECF No. 44. Plaintiff sought leave to reopen the case for what he characterized as a breach of the settlement agreement and for ineffective assistance of counsel. Plaintiff also filed a Motion for Leave to File Amended Complaint. ECF No. 46. In these Motions, Plaintiff broadly alleged that Defendants violated his religious freedoms and the terms of the parties' settlement agreement, but only specifically identified two instances of purported breach: (1) Defendants' placement of settlement funds into escrow; and (2) not permitting Plaintiff to purchase his Yoruba Santeria beaded necklaces. ECF No. 53 ¶¶ 10-11. Plaintiff further claimed that, following the execution of the settlement agreement, "more constitutional claims have arisen." Id. at ¶ 12. Defendants filed a Brief in Opposition. ECF No. 57.

Upon review, the Court found that a settlement of all claims was reached, the settlement agreement was fully executed by the parties and apparently complied with by the parties. ECF No. 61 at 3. With respect to Plaintiff's request for leave to amend his Complaint, the Court further found that Plaintiff had not established the requisite good cause for delay in moving to amend his Complaint. Id. The Court noted that, to the extent Plaintiff wished to bring a new lawsuit alleging new claims, he was free to do so. Id.

To the extent Plaintiff sought to have the Court address any issues relative to the handling of settlement funds, however, the Court granted Plaintiff permission to request that the Court

---

[2] Following Plaintiff's pro se filing of various motions, on July 9, 2019, Plaintiff's counsel filed a motion to withdraw as counsel for Plaintiff. ECF No. 51. In support of their request, counsel explained that Plaintiff demanded they take actions with which counsel had a fundamental disagreement, and that Plaintiff appeared to have lost confidence in their representation, as he had filed multiple pro se motions with the Court, including twice seeking to have counsel removed. The Court granted Plaintiff's counsel's request to withdraw on July 9, 2019, and Plaintiff is now proceeding pro se. ECF No. 52.

schedule a conference with Plaintiff's former counsel[3] and defense counsel, with Plaintiff participating by telephone. Id. at 4. Thereafter, Plaintiff requested, and the Court granted, the scheduling of a video status conference. ECF Nos. 63 and 64.

The Court held a status conference on November 12, 2019. Plaintiff and Defendants' counsel participated in the conference, with Plaintiff participating remotely from SCI-Forest. ECF No. 68. Plaintiff participated by audio conference as a result of technical issues with the video feed at SCI-Forest. Id.

During the conference, the Court addressed two issues that Plaintiff complained about in relation to the previous settlement: that he had not received a consecrated Santeria beaded necklace and his complaint relative to the payment of $6,500 in settlement proceeds.

First, as to the necklace, the settlement agreement expressly provided that Plaintiff was "permitted to purchase a consecrated black and red beaded necklace and consecrated yellow beaded necklace." ECF No. 77 at 11:7-9. Plaintiff stated:

> It's a little complicated because when you're initiated under the mysteries of Santeria Orisha, which is a saint, the person who initiated you has to reconsecrate the beads all over again, or a priest that is initiated under the same mysteries of the same Orisha saint that I was initiated under. That's probably where the problem comes in because they can't probably find a priest that—because those practices have to be strictly followed.

Id. at 7:4-11.

The Court asked Plaintiff to identify the name and address of the person who could consecrate the beads.

> PLAINTIFF: I can't do that, right, but the person who initiated me under those mysteries of Orisha Oshun said the beads were destroyed. They would have to get another chicken and they're not going to permit that on prison grounds. They're going to charge me another $2,500 just—the beads don't cost nothing, the beads only cost like maybe $5.00, depending what store you buy it from, but just the consecrated thing, they're going to charge me $2,500 all over again.

---

[3] Plaintiff's former counsel was unavailable to attend on the scheduled date of the conference.

> THE COURT: Your issue is—the issue is not the cost of the beads themselves, the issue is having them consecrated.
>
> PLAINTIFF: Having to consecrate the beads, right.

Id. at 7:20-8:6.

Counsel for DOC reported that the chaplain had tried to assist Plaintiff by attempting to locate the Santeria beads, but he was told by a number of vendors that there had to be a particular type of Santeria and there were consecration issues. Id. at 10-11.

Following hearing from Plaintiff and counsel for the DOC, the Court again informed Plaintiff that the DOC had fully complied with the settlement agreement by permitting Plaintiff to purchase a Santeria consecrated black and red beaded necklace and consecrated yellow beaded necklace to be worn in his cell. Obviously, Plaintiff was free to contact vendors directly to purchase or consecrate the specific Santeria beaded necklace that Plaintiff wanted. Id. at 11-13. Thereafter, counsel for DOC offered to assist in facilitating the delivery of the consecrated beads to Plaintiff at SCI Forest. Id. at 13-14.

Second, in terms of the payment of the $6,500 issued to Plaintiff as part of the settlement, Plaintiff complained that the funds went into an escrow account and were not available in their entirety for his personal use.

Counsel for the DOC explained that DC ADM 005 expressly provides:

> Yes. So, two matters. The first is Pennsylvania's Act 84, which authorized the Department of Corrections to issue a policy for the collection of court-ordered restitution and fines.
>
> The department then duly did issue such a policy and the relevant section, this is DC ADM 005, Collection of Inmate Debts Procedures Manual, Page 3-9(e)(1). It says: When an inmate receives monetary damages or a settlement as a result of prison conditions litigation—which is what happened here—that are payable from funds appropriated by general assembly or insurance policy purchased by the Commonwealth—so here it was through funds appropriated by the general

4

assembly—the proceeds shall first be used to satisfy fines, costs and restitution and any outstanding court ordered debt related to the criminal act. When an award or settlement occurs, the chief counsel's office will advise the Bureau of Administration, the Bureau of Administration will arrange to deduct the full amount owed from the proceeds.

And I have a case here Montanez [v.] the Secretary of Pennsylvania, Department of Corrections, 773 F.3d 472 at Page 477 ([3d Cir.] 2014) which confirms that the Department of Corrections is authorized to make policy about the disposition of these funds to pay the debts.

Now, I think where the second issue comes, there's another section of the policy that says that 20 percent of any money an inmate gets to his inmate accounts, goes to pay down the debts. That is just money that he happens to get, maybe family gives it to him or he earns it in some way.

THE COURT: That is in his inmate account.

Id. at 16:19-17:22.

The Court explained to Plaintiff that in accordance with Act 84 and the DOC policy, DC ADM 005, regarding collection of inmate debt procedures, that if he receives any lump sum settlement being paid by state funds, those funds—in this case $6,500—must first go to court-ordered restitutions, fines, and costs. Id. at 19.

Plaintiff indicated that he understood the applicable statute and policy, but he "would like" to pay only 50% towards restitution. Id.

At the conclusion of the conference, the Court clearly stated:

So, I scheduled the video conference so that we could have you and Mr. Mazzocca in the Court's presence because I wanted to clarify to you to make sure it was clear with you in terms of the beads and what DOC was required to do.

In terms of the beads, DOC stands ready to permit you to purchase the consecrated black and red beaded necklace, as well as the consecrated yellow beaded necklace. We've talked about a couple different ways you can get it. But it's your responsibility to get the beads, and if you can get them, if you can get them to Mr. Mazzocca, he has represented to the Court that he will make sure they get to you.

> Secondly, in terms of the 6,500, DOC, the defendants in this case, have paid the 6,500, and the issue is that you have substantial court-ordered restitutions, fines and costs that get paid first because that money is coming to you from the state. So, I wanted to get on the phone or on video with you and just be clear as to why that is. So, at this point, as I ruled, DOC has not violated the settlement agreement and release of all claims.

Id. at 20:14-21:8.

Following the status conference, Plaintiff filed various unsuccessful motions and appeals to District Judge J. Nicholas Ranjan and the United States Court of Appeals for the Third Circuit. ECF Nos. 70, 73, 81, 87, 92, 98, 99. Since November 16, 2020, there has been no activity in this case until Plaintiff filed correspondence to the Court on April 13, 2023. ECF No. 100.

In the instant letter, Plaintiff claims that the Court "stipulated" in the November 2019 video conference that it will require Defendants to pay $2,500 for Plaintiff to obtain consecrated Santeria beads if he can find someone to consecrate them. Plaintiff provides the name and address of a Santeria priestess he states would be willing to consecrate the beads, and he asserts that he "needs to discuss with [the Court] on how we can agree to proceed with this matter" because he "remain[s] without the practice of [his] religious freedoms." Id.

Upon review, the Court construes Plaintiff's letter as a Motion for Status Conference and to Re-open this Matter, and it will deny this requested relief. As detailed above, the Court did not agree to require Defendants to pay any additional funds at the November 2019 status conference. To the contrary, the Court explained that Defendants have already paid any funds owed in accordance with the settlement agreement, and this matter is concluded. There is no basis for the Court to conduct a status conference or to re-open this matter. If Plaintiff seeks to assert any additional claims, he may file a new lawsuit in the appropriate jurisdiction.

AND NOW this 17th day of April, 2023, IT IS HEREBY ORDERED that Plaintiff's Motion for Status Conference and to Re-open this Matter is DENIED.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of this Order to file an appeal to the District Judge which includes the basis for objection to this Order. Any appeal is to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to file a timely appeal will constitute a waiver of any appellate rights.

SO ORDERED,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:  Bienvenido Rodriguez
     LQ7479
     SCI DALLAS
     1000 Follies Rd.
     Dallas, PA 18612

     All counsel of record via CM/ECF